THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EARNEST OATIS,

      Plaintiff,

v.

DENNIS LARSON, CRYSTAL CROW,
STACY MENEES, MARJORIE MAXEY,
DEBBIE ISAAC, JESSY WALLACE, MR.
MAULDING, and KIMBERLY
HVARRE,

      Defendants.

Case No. 3:25-cv-01420-GCS

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Earnest Oatis, an inmate of the Illinois Department of Corrections who is currently incarcerated at Big Muddy River Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Oatis's original Complaint (Doc. 1) alleging deliberate indifference in the treatment of his ear pain was dismissed without prejudice, but Oatis was granted leave to file an amended pleading. (Doc. 19). In his Amended Complaint, Oatis alleges Defendants were deliberately indifferent in treating various medical conditions. (Doc. 20).

Since filing his amended pleading, Oatis has filed numerous exhibits, supplements, letters, and motions. On November 3, 2025, Oatis filed three exhibits (Doc. 21, 22, 23) which appear to document his efforts to obtain counsel and to reiterate his lack of understanding of the law. Oatis does not currently have a motion for the recruitment

of counsel pending before the Court. On December 22, 2025, Oatis filed a "notice" informing the Court he believed his legal mail was being opened outside of his presence. (Doc. 25). He filed a motion (Doc. 28) informing the Court again about his mail and two letters explaining the contents of the mail that was opened. (Doc. 29, 30). He recently submitted two "notices" with exhibits related to his issues with his legal mail. (Doc. 38, 39). He has also submitted numerous medical records (Doc. 26, 27) and copies of grievances (Doc. 33, 36), and additional factual allegations (Doc. 35). Finally, Oatis filed a motion asking to add additional defendants to his case. (Doc. 34).

First, the Court notes that it is inappropriate to send letters and other forms of communications to the court *ex parte*. The proper way to communicate and seek an order from the Court is through a properly filed motion in accordance with the Federal Rules of Civil Procedure. For instructions on submitting a proper motion seeking relief, the Court **DIRECTS** Oatis to SDIL Local Rule 7.1. To the extent his various letters ask for relief, those requests are **DENIED**. Further, to the extent Oatis seeks to amend his pleading with the various supplements and motions on the docket, the Court does not accept piecemeal amendments to the complaint. A pleading must stand on its own without reference to any other pleading. Accordingly, his motion to add defendants (Doc. 34) is **DENIED**. Oatis should also not file discovery or exhibits on the docket unless it relates to a specific motion. *See* SDIL Local Rule 26.1(b). Finally, to the extent Oatis complains about officials opening his legal mail from attorneys, these allegations appear to be unrelated to the claims regarding his medical care in his Amended Complaint. To the extent he seeks relief as to these unrelated claims, he would have to file a new lawsuit

after first exhausting his administrative remedies. His motion seeking relief for his legal mail (Doc. 28) is **DENIED**.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE AMENDED COMPLAINT

Oatis alleges on two occasions, Dr. Larson stopped his diabetic medications. (Doc. 20, p. 6). He notes this occurred once in 2023 and again in 2024. Oatis also asked Dr. Larson for stronger medication for pain in his right ear. *Id*. Oatis notes at one point the side of his face was swollen. *Id*. Oatis wrote to a disability civil rights attorney to get her to contact Dr. Larson about medication for his pain. *Id*. at p. 7.

Oatis alleges he wrote to Marjorie Maxey, an ADA coordinator at the prison, about his stolen vibration alarm watch and CL20 headphones. (Doc. 20, p. 8). Maxey informed him that IDOC was no longer issuing ADA watches to inmates. *Id*. On May 15, 2025, Oatis wrote to Maxey he no longer wanted his pager watch and asked her to pick it up. *Id*. She responded she did not receive his request slip but later sent him another response indicating IDOC was no longer distributing watches to inmates, and the watches in her possession were already assigned to inmates. *Id*. at p. 9. On July 31, 2025, Oatis spoke to Maxey about the items, and she indicated IDOC reversed its decision on the items, and

the items would be redistributed. *Id*. at p. 8. She informed him there were 31 watches for inmates that needed them. *Id*. at p. 9.

As to Nurse Practitioner Stacy Menees, Oatis alleges she diagnosed him with an ear infection. (Doc. 20, p. 10). On June 20, 2022, Menees first diagnosed him and ordered ear drops and an antibiotic. *Id*. On January 4, 2023, Oatis developed another infection, and Menees prescribed additional medications. *Id*. Oatis alleges, at some unknown point, he saw a specialist and asked the doctor to request additional antibiotics from Dr. Larson and Nurse Practitioner Menees. In October 2023, Oatis received additional antibiotics. *Id*. He further alleges Menees and Larson claimed that they ordered him Motrin, but this was not true.

As to Warden C. Crow, Oatis alleges he wrote to her about his grievances. (Doc. 20, p. 11). He later saw Warden Crow and asked if she had received his letter, but she instructed him to return to his housing unit. *Id*. Oatis alleges Counselor Maulding failed to return five or six grievances. *Id*. at p. 12. He specifically handed one to Maulding in April 2024 regarding his medical records. Maulding informed Oatis he would have another counselor review it because Oatis mentioned Maulding in the grievance. *Id*. Oatis alleges Debbie Isaac withheld three or four of his grievances. *Id*. at p. 14. Oatis spoke to Debbie Isaac about his grievances, and she indicated she received help to go through the grievances. But the individual assigned to help Isaac developed an illness and his grievances were delayed. *Id*. In either 2022 or 2023, Oatis alleges he spoke to Warden Hvarre about delays in the grievance process, and she said the grievances were on her

desk, and she would send them to him. *Id*. at p. 15. Oatis acknowledges he received the grievance response, but it took a total of four months to obtain the response.

Jessy Wallace was previously in charge of medical records at the prison, and Oatis alleges she failed to send his test results to the specialist. (Doc. 20, p. 13). Oatis saw specialists on two occasions, one on April 25, 2023, and another in October 2023. They both requested test results from his medical records, including the results of an MRI, ultrasound, and CT scan. *Id*. He alleges this caused delays in "possible surgery." *Id*.

### PRELIMINARY DISMISSALS

Oatis alleges that numerous grievance officials delayed responses to his grievances. He alleges Debbie Isaac and Counselor Maulding held on to several grievances, although he acknowledges that he received responses to at least some of those grievances. He alleges Warden Hvarre took several months to provide him a response. He tried to speak to Warden Crow about his grievances, but she directed him back to his cell. Although he alleges there were delays in receiving responses to his grievances, the denial or mishandling of the grievances by these officials fails to state a claim. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (stating that "a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). Thus, Oatis fails to state a claim against Debbie Isaac, Maulding, Hvarre, and Crow.

Oatis also alleges he spoke to Marjorie Maxey about his vibration alarm watch and CL20 headphones. It is not clear how Oatis believes that Maxey violated his rights regarding these items. At one point, Oatis alleges he wrote to her asking to pick up his

pager watch because he did not want it anymore, but he also states that she told him that IDOC was not going to supply the watches anymore. A complaint must provide enough facts to give defendants fair notice of the claims against them. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But nothing in the Amended Complaint suggests that Maxey acted with deliberate indifference or denied him services under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq. See Lacy v. Cook County, Illinois*, 897 F.3d 847, 853 (7th Cir. 2018). It is not even clear what actions of Maxey allegedly violated Oatis's rights. Thus, he fails to state a claim against Maxey.

## DISCUSSION

Based on the allegations in the Amended Complaint, the Court designates the following counts:

> **Count 1:** **Eighth Amendment deliberate indifference claim against Dr. Larson for delaying Oatis's diabetic medications and treating his ear infection.**
>
> **Count 2:** **Eighth Amendment deliberate indifference claim against Nurse Practitioner Menees for treating Oatis's ear infection.**
>
> **Count 3:** **Eighth Amendment deliberate indifference claim against Jessy Wallace for delaying the transfer of Oatis's records to specialists.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be**

Page **6** of **12**

**considered dismissed without prejudice as inadequately pled under the** *Twombly* **pleading standard.**[1]

To successfully state an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must plead that he suffered from "an objectively serious medical condition" and that a "state official was deliberately . . . indifferent" to that condition. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). A plaintiff must demonstrate that the defendant's actions were more than negligent, something approaching intentional wrongdoing or criminal recklessness. *See Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Further, a plaintiff must demonstrate that each defendant had knowledge of his condition and was personally involved in his care. *See, e.g., Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (stating that "[l]iability depends on each defendant's knowledge and actions"). A successful complaint generally alleges "the who, what, when, where, and how . . . ." *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

As to Dr. Larson, Oatis alleges the doctor stopped his diabetic medications on two occasions and failed to prescribe "stronger" medications for his ear pain. But as to the diabetic medications, Oatis fails to allege exactly when his diabetic medications were discontinued and how long he went without the medication before receiving another dose. Oatis also fails to offer pertinent information about Dr. Larson's involvement in

---

[1]     *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face.").

prescribing those medications, including when he spoke to Dr. Larson about the medications and Dr. Larson's response, if any. As to his medication for his ear pain, Oatis fails to identify the medication he received for his ear pain and the medication that he requested. Later in his Amended Complaint, he acknowledges he received medication for his ear and that Dr. Larson prescribed additional antibiotics after Oatis saw a specialist. (Doc. 20, p. 10). A prisoner is not entitled to demand specific care, nor does the mere disagreement in the course of treatment amount to deliberate indifference. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997). Although Oatis wanted different medication, nothing in the Amended Complaint suggests Dr. Larson's actions amounted to deliberate indifference. Thus, Oatis fails to state a claim against Dr. Larson.

Similarly, Oatis fails to state a claim against Nurse Practitioner Menees. He alleges she diagnosed and prescribed him ear drops and an antibiotic for his first infection and that she prescribed him antibiotics after his second infection. He also acknowledges she prescribed him additional antibiotics at the request of a specialist. Nothing in the pleading suggests Menees acted with deliberate indifference when she prescribed him medications on several occasion for his ear, nor has he even alleged that she prescribed the wrong medications. She treated his condition and followed the requests of the specialist. Her decisions regarding what medications to prescribe appear to be, at most, negligence, which does not state a claim.

Finally, Oatis fails to state a claim against Jessy Wallace. Oatis alleges Wallace was in charge of medical records at Big Muddy and delayed sending his test results to the

specialists when they requested the tests. A delay in treatment can amount to deliberate indifference if the "delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). But Oatis fails to allege how the delay in providing records to the specialist impacted his treatment plan. Although he alleges that "possible surgery" was delayed, he fails to allege that he needed surgery or that he later received surgery for the condition.[2]

This is Oatis's second attempt at submitting a pleading that states a viable claim and he has been unable to do so. The Court finds that further amendments would be futile. Accordingly, Oatis's Amended Complaint is **DISMISSED with prejudice**.

### MOTION FOR PRELIMINARY INJUNCTION

Oatis recently filed a "motion on the defendants and add on" in which he states he believes his situation is an emergency and seeks relief pursuant to Federal Rule of Civil Procedure 65. (Doc. 37). Oatis identifies numerous issues he is currently experiencing at the prison. Oatis alleges he turned in his sticker to renew his omeprazole in January 2026, but he did not receive the medication until just recently. *Id.* at p. 2. He blames Dr. Larson for the five-to-six-week delay in his medication. *Id.* Oatis also claims he needs a new identification card because he lost his, but he has spoken to several correctional officers, and he has been unable to obtain a new identification card. As a result, it has been three

---

[2]     Oatis also fails to identify the condition for which he sought treatment. He refers to seeing two specialists, and he previously alleged in his amended pleading that he saw two specialists for his ear pain. But he fails to allege his diagnosis from the specialists or the surgical intervention that was being considered for his condition.

weeks since he attended commissary because he must have his identification card to attend commissary. *Id*. He notes there were also delays in receiving his hygiene items.

Finally, he notes he put in sick call request slips on December 16, 2025, and January 20, 2026, but he has yet to be seen. He spoke with health care administrator Tate and he said he would look for his sick call request, but he has not heard back. *Id*. at p. 3.

Oatis alleges staff at the prison are out to get him because of his pending lawsuit. He alleges a nurse noted he had a lawsuit against Dr. Larson. He also reiterates he experienced issues with the opening of his legal mail and fears for his life.

But Oatis fails to allege he is entitled to injunctive relief in this case. The allegations he raises are unrelated to the claims in his lawsuit. His Amended Complaint focuses mainly on treatment for an ear infection and access to his diabetes medication. His motion, however, includes various claims regarding access to his omeprazole, help in obtaining a new identification card, and his requests to be seen for an unspecified condition. Most of the allegations in his motion are not only unrelated to the claims in this lawsuit but identify individuals who are not currently defendants in this case. To the extent he wants to pursue these claims or seek relief, he would need to file a new lawsuit after first exhausting his administrative remedies. None of the allegations substantiate Oatis's claim that he is facing an immediate threat to his life or would justify his requested relief of a prison transfer. *Id*. at p. 3. To the extent he seeks injunctive relief as to these unrelated claims, his motion is **DENIED**.

Oatis does mention Dr. Larson, who is identified as a defendant in his Amended Complaint, but he fails to allege Dr. Larson was personally involved in the delay in

receiving his refill on his omeprazole. He alleges he submitted the sticker for a refill and the refill was delayed five or six weeks. But there are no allegations to suggest Dr. Larson was personally involved in the refill process. Nor are there any allegations to suggest Oatis spoke to Dr. Larson or informed him of delays in his medication. Further, Oatis acknowledges he has since received his medications, making his motion **MOOT**.

### DISPOSITION

For the reasons stated above, Oatis's Amended Complaint is **DISMISSED with prejudice** for his failure to state a claim. The dismissal counts as one of Oatis's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

Oatis is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed. Therefore, the filing fee remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Oatis wishes to appeal this Order, he must file a notice of appeal with this Court within **30 days** of the entry of judgment. *See* FED. R. APP. PROC. 4(a)(1)(A). If Oatis does choose to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. PROC. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-726 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-859 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. He must list each of the issues he intends to appeal in the notice of appeal, and a motion for leave to appeal *in forma pauperis* must set forth the issues he plans to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). Moreover, if the appeal is found to be non-meritorious, Oatis may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-

day appeal deadline. *See* FED. R. APP. PROC. 4(a)(4). A Rule 59(e) motion must be filed no more than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  March 20, 2026.**

Digitally signed by Judge Sison
Date: 2026.03.20 14:48:07 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**